# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| ALLISON COUGILL,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>PROSPECT MORTGAGE, LLC,<br><br>　　　　Defendant. | Civil Action No. 1:13-cv-01433-JCC-TRJ |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS ASSERTED BY PLAINTIFF ALLISON COUGILL**

Respectfully submitted,

/s/ Taron K. Murakami
Taron K. Murakami
Virginia State Bar No. 71307
SEYFARTH SHAW LLP
975 F Street, NW
Washington, DC 20004
Telephone: (202) 463-2400
Facsimile:  (202) 828-5393
tmurakami@seyfarth.com

Barry J. Miller (admitted *pro hac vice*)
BBO 661596
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile:  (617) 946-4801
bmiller@seyfarth.com

*Counsel for Defendant*
*Prospect Mortgage, LLC*

16577827v.2

**TABLE OF CONTENTS**

I.     SUMMARY ............................................................................................................. 1

II.    UNDISPUTED FACTS .......................................................................................... 2

III.   ARGUMENT AND AUTHORITIES ..................................................................... 6

       A.    The Outside Sales Exemption Bars Plaintiff's Claim ............................................ 7

             1.    Cougill's Primary Duty Was to Sell Mortgage Products and
                   Services ................................................................................................. 7

             2.    Cougill Was Customarily and Regularly Engaged in Sales
                   Activities Away From Prospect's Places of Business ............................. 10

IV.    CONCLUSION ..................................................................................................... 15

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Auer v. Robbins*,
   519 U.S. 452 (1997) .................................................................................................................13

*Brody v. AstraZeneca Pharm., LP*,
   CV 06-6862 ABC, 2008 U.S. Dist. LEXIS 107301 (C.D. Cal. June 11, 2008) .......................14

*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (U.S. 2012) .................................................................................................8, 13

*Grace v. Family Dollar Stores, Inc. (In re Family Dollar FLSA Litig.)*,
   637 F.3d 508 (4th Cir. 2011) ......................................................................................................7

*Gregory v. First Title of Am., Inc.*,
   555 F.3d 1300 (11th Cir. 2009) ............................................................................................9, 10

*Ho v. Ernst & Young LLP*,
   C 05-4867 JF, 2009 U.S. Dist. LEXIS 5294 (N.D. Cal. Jan. 15, 2009) ...................................14

*Lint v. Northwestern Mut. Life Ins. Co.*,
   No. 09CV13732010 U.S. Dist. LEXIS 123117 (S.D. Cal. Nov. 19, 2010) ........................10, 11

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007) .................................................................................................................13

*Marx v. Friendly Ice Cream Corp.*,
   380 N.J. Super. 302 (2005) ......................................................................................................14

*Ramirez v. Yosemite Water Co.*,
   978 P.2d 2 (Cal. 1999) .............................................................................................................14

*Reyes v. Goya Foods, Inc.*,
   No. 13-12827, 2013 U.S. App. LEXIS 24257 ........................................................................14

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) .................................................................................................................13

*Sliger, et al., v. Prospect Mortgage, LLC*,
   No. Civ. S-11-465 ......................................................................................................................2

*Tracy v. NVR, Inc.*,
   599 F. Supp. 2d 359 (W.D.N.Y. 2009) ....................................................................................13

**STATUTES**

29 U.S.C. § 213(a)(1) ..................................................................................................................1, 7

29 U.S.C. § 255(a) .............................................................................................................................2

Fair Labor Standards Act. ..............................................................................................1, 2, 3, 7, 8, 15

DOL Wage Hour Op. Ltr. FLSA 2006-11 (Mar. 31, 2006) ............................................8, 9, 12, 13

DOL Wage Hour Op. Ltr. FLSA 2007-2 ..................................................................................10, 11

DOL Wage Hour Op. Ltr. FLSA (Jan. 15, 1971) ..............................................................................8

**OTHER AUTHORITIES**

29 C.F.R. § 541.500 ....................................................................................................................8, 10

29 C.F.R. § 541.500(b) ....................................................................................................................13

29 C.F.R. § 541.503 ...........................................................................................................................8

29 C.F.R. § 541.701 (2008) ............................................................................................................11

69 Fed. Reg. 22122, 22187 (Apr. 23, 2004) ..................................................................................11

Fed R. Civ. P. 56(a) ..........................................................................................................................7

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ALLISON COUGILL,<br><br>    Plaintiffs,<br><br>v.<br><br>PROSPECT MORTGAGE, LLC,<br><br>    Defendant. | Civil Action No. 1:13-cv-01433-JCC-TRJ |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS ASSERTED BY PLAINTIFF ALLISON COUGILL**

Defendant Prospect Mortgage, LLC ("Prospect") files this memorandum of points and authorities in support of its motion for summary judgment seeking dismissal of Plaintiff Allison Cougill's minimum wage and overtime claims under the Fair Labor Standards Act ("FLSA"). For the following reasons, the Court should grant the motion.

## I.  SUMMARY

Plaintiff Allison Cougill is a former outside sales mortgage loan officer for Prospect. She seeks overtime pay and minimum wages under the FLSA, but her claims cannot survive summary judgment because she was properly classified as exempt from the FLSA's minimum wage and overtime pay requirements, pursuant to the outside sales exemption. 29 U.S.C. § 213(a)(1). That is, by her own admissions, her primary duty was to originate new loans for Prospect and she was customarily and regularly engaged in sales work away from Prospect's place of business.

16577827v.2

## II.     UNDISPUTED FACTS

1. In October 2010, Elizabeth Sliger and other plaintiffs filed a collective action against Prospect, under Section 216(b) of the Fair Labor Standards Act ("FLSA"). *See Sliger, et al., v. Prospect Mortgage, LLC*, No. Civ. S-11-465 LKK/EFB (E.D. Cal.). In the lawsuit, the plaintiffs sought overtime pay and minimum wages under the FLSA.

2. Cougill filed a consent to join the *Sliger* lawsuit on November 16, 2011. (Second Amended Complaint, Dkt. 12 at ¶ 15).

3. Cougill worked as an outside sales mortgage loan originator for Prospect from July 31, 2008 to October 3, 2011. (Cougill Dep. at 73:22 - 74:9; 213:13-20).[1]

4. She reported to Rick Eaheart from July 31, 2008 to December 1, 2010. (*Id*. at 128:5 - 129:4). For the remainder of her employment, she reported to Arthur Smith. (*Id*.). Both Eaheart and Smith reported to the District Manager, Doug Houston (*Id*.). At no time did Cougill tell her managers that she believed she was entitled to overtime pay. (*Id*. at 94:19 - 95:2).

5. Cougill claims she worked approximately 60 to 70 hours a week for Prospect (*Id*. at 175:19 - 176:3).

6. Cougill was not required to work a certain number of hours per week; she did not have a set schedule; she was not required to be in the office for any set amount of time; and she was not required to record her hours. (*Id*. at 240:6 - 214:5).

7. Cougill's job required her to offer residential mortgage loans to her prospects and to convince them to select Prospect's loan product over competitor products. (*Id*. at 151:7-16; 166:19-21). She was required to "know [her] product and how to relate that to [her] clients' needs for a loan." (*Id*. at 12:18 - 13:6).

---

[1] Relevant excerpts from the transcript of the deposition of Allison Cougill are attached hereto as Ex. 1.

8. When dealing with her customers, she "listens to their needs. And when [she] feels like she understands their needs, [she uses her] product knowledge and [her] experience to be able to find the right product for them to bring them a mortgage." (*Id*. at 14:4-9; 150:12 - 151:6).

9. Cougill was paid on a commission basis. She earned a commission for each loan that a customer obtained through her. (*Id*. at 152:12-17).

10. Despite these admissions, at one point in her deposition, Cougill disputed that it was her job to sell loan products. In her view, the loans were not products; she considered the loans to be services that she sold. (*Id*. at 152:7 - 154:9; "Q: So you're selling a service. Is that what you're saying? A: Yes." 154:7-9).

11. At the beginning of Cougill's employment, she signed a Loan Officer Compensation Plan, which states, "This outside sales position has been deemed exempt based on the requirements of the Fair Labor Standards Act and applicable state law. Employee agrees to comply with the requirements of Prospect Mortgage's Employment Agreement Regarding Outside Sales Activities." (Ex. 2, Compensation Plan; Cougill Dep. at 130:4 - 131-17).

12. Cougill also agreed to Employment Agreements in 2008 and 2010, in which she agreed to abide by the terms of the Employee Agreement Regarding Outside Sales Activities and that her position was classified as exempt from the Fair Labor Standards Act. (Ex. 3, 2008 Employment Agreement, at ¶ 3; Cougill Dep. at 134:12 - 137:10; Ex. 4, 2010 Employment Agreement, at ¶2.9; Cougill Dep. at 138:20 - 141:1).

13. Also at the beginning of her employment with Prospect, on July 31, 2008, Cougill signed the Agreement Regarding Outside Sales Activities ("Outside Sales Agreement"), which provided that her primary duty as a loan officer was to customarily and regularly:

    (i)    <u>sell</u> mortgage loans and other Prospect Mortgage products to Customers … or obtain orders or contracts from Customers for such products,

    (ii)    <u>away</u> from Prospect Mortgage's places of business or the employee's own office whether located at home or elsewhere.

(Ex. 5, Outside Sales Agreement) (emphasis in original); Cougill Dep. at 141:2 - 142:3).

    14.    The Outside Sales Agreement also stated that Cougill was required to notify Human Resources immediately if she was unable to comply with the outside sales activities requirement of her position. (Ex. 5, at ¶ 4). Cougill never contacted Human Resources to report any inability or failure to comply with the agreement. (Cougill Dep. at 149:18 - 150:6).

    15.    Each time one of Cougill's loans closed, she would receive an automated email from Prospect with a "Things to Remember" section. The email asked her to consider: "How much time [is she] spending prospecting vs. desk sitting?" (Ex. 6, Loan Funded Notification; Cougill Dep. at 235:3 - 236:14).

    16.    Cougill testified that she spent "99.9 percent" of her time in the office working for Prospect. (Cougill Dep. at 22:13-19). She also testified that the highest percentage of time she spent outside the office was "a half percent." (*Id*. at 167:13-17). However, Cougill later admitted that this estimate covered only her time during traditional business hours, and she was not including nights or weekends in her answers. (*Id*. at 169:3-20).

    17.    When asked how much time she spent outside of the office (and outside of her home office), she estimated she spent approximately **15 to 20 hours a week** engaged in outside activities:

> Q:    I'm asking you about the time out spent outside of the office for Prospect. So that includes open houses. That includes trade shows. That includes meetings with the realtors. All those things. Given me an estimate of how many hours a week on average that you think you worked outside of the office and outside of your home office.
>
> A:    15 to 20 hours a week.

4

16577827v.2

(*Id*. at 173:20 - 174:6).

18. Cougill's tax statements are also consistent with her testimony and reflect substantial outside activity in the course of her work for Prospect. While she was employed by Prospect, she incurred substantial unreimbursed business expenses and business mileage on her vehicle:

|  | 2009 | 2010 | 2011 |
|---|---|---|---|
| **Unreimbursed Business Expenses** | $12,503 | $10,783 | $13,782 |
| **Business Mileage** | 12,649 | 10,833 | 9,927 |

(Ex. 7, 2009, 2010, and 2011 Tax Returns; Cougill Dep. at 193:2 - 209:10).

19. Cougill testified at length about her outside sales activities. For instance, she concedes that she attempted to meet prospects at open houses for homes that were on the market. She attended at least two open houses every month (on her 2011 Business Plan her goal was to attend four to six open houses per month (Ex. 8, Business Plan; Cougill Dep. at 230:4-12; 232:15-17)) and each open house required a time investment of approximately four to five hours, plus an additional thirty minutes to an hour for travel. (Cougill Dep. at 21:3-20; 156:10 - 158:4). Before each one, she spent time making copies of handouts and flyers to distribute at the open houses. (*Id*. at 158:9-14; 162:21 - 163:11). She admits that Prospect required her to attend these open houses. (*Id*. at 176:20-22).

20. Cougill also admits that Prospect required her to teach home buyer courses, and she considered these courses part of her business development plan. (*Id*. at 177:1-3; 231:13-21). Every other month for a year, she taught a new home buyer course for the military at Fort Lee, in Petersburg, Virginia. (*Id*. at 158:15 - 159:10). The classes lasted four hours each, two days a

5

week.  (*Id*. at 159:18-21).  She also taught new home buyer courses at churches, typically on Saturday mornings, for a few hours.  (*Id*. at 159:12 - 160:3).  (*Id*. at 160:4-6).

21.     Cougill also taught similar courses at real estate offices on weekday nights, and she gave "lunch & learn" presentations.  (*Id*. at 160:17 - 161:19).

22.     In addition, Cougill attended closings on her clients' home purchases—in an attorney's office—at least one to two times a month, with each one lasting thirty minutes to one hour.  (*Id*. at 156:2 - 157:16).

23.     Cougill also met with her realtor contacts once a month for lunch and met with other referral sources for breakfast, lunch, or dinner every couple of months.  (*Id*. at 163:12-21; 174:21-22).

24.     Throughout her employment with Prospect, Cougill devoted time to a networking group known as Business Network International ("BNI").  (*Id*. at 15:22 - 16:18; 165:6-8).  She met with this group to network with potential referral sources at lunches each week (or every other week), and each lunch lasted approximately an hour or an hour and a half.  (*Id*. at 16:8-11; 165:9-17).  In addition, she regularly attended one-on-one meetings with BNI members over lunch for half an hour, "to try to get to know each other better so [they] could refer business to each other.  (*Id*. at 210:14 - 211:5).

25.     Cougill agrees that the closings, open houses, home buying seminars, and meetings with realtors were all activities that were an important part of selling.  (*Id*. at 165:18 - 166:14).

### III.     ARGUMENT AND AUTHORITIES

Summary judgment is appropriate where there exists no genuine issue of material fact, and based on the undisputed facts, the moving party is entitled to judgment as a matter of law.

16577827v.2

*Grace v. Family Dollar Stores, Inc. (In re Family Dollar FLSA Litig.)*, 637 F.3d 508, 512 (4th Cir. 2011) (citing Fed R. Civ. P. 56(a)).

### A. The Outside Sales Exemption Bars Plaintiff's Claim

Cougill sues for alleged minimum wage and overtime violations under the FLSA. However, any employee employed "in the capacity of outside salesman" is exempt from the FLSA's minimum wage and overtime requirements. 29 U.S.C. § 213(a)(1). Accordingly, if Cougill performed work that meets the requirements of the outside sales exemption, then the Court should dismiss her claims on summary judgment.

The statute provides no further definition or explication of the term "outside salesman," and DOL's implementing regulations broadly defines the term as an employee:

(1) Whose primary duty is:

    (i) making sales within the meaning of section 3(k) of the Act, or

    (ii) obtaining orders or contracts for services … for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500. Outside sales employees may perform promotional work as an exempt outside sales activity if it is "performed incidental to and in conjunction with an employee's own outside sales or solicitations." 29 C.F.R. § 541.503.

#### 1. *Cougill's Primary Duty Was to Sell Mortgage Products and Services*

As noted above, to qualify for the outside sale exemption, the employee's primary duty must be making sales or obtaining contracts for services for which a consideration will be paid by the client. Section 203(k) of the FLSA provides that "'[s]ale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." As the Supreme Court recently explained, Congress's use of the terms "includes" and "other

7

disposition" evidence Congress's intent to define the term "sale" in a broad manner. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170-72, n. 18 (U.S. 2012) (rejecting technical argument that pharmaceutical representatives do not make "sales" under the outside salesperson exemption; "the FLSA … definition of "sale" … is more expansive than the term's ordinary meaning.").

"Obtaining and soliciting mortgages is considered "sales" work under the FLSA. *See* DOL Wage Hour Op. Ltr. FLSA 2006-11 (Mar. 31, 2006) ("[A]n employee who actually obtains an application for . . . a loan . . . meets the definition of sales in section 3(k) of the FLSA") (citing Field Operations Handbook (FOH) § 22e02 and quoting DOL Wage Hour Op. Ltr. FLSA (Jan. 15, 1971)). As the DOL has explained, sales work includes promotion work such as "developing and maintaining referral sources;" "meet[ing] with prospective clients at locations other than the employer's business"; "mak[ing] in-person calls on real estate agents and brokers, financial advisors, and other potential referral sources to develop borrower leads;" and "engag[ing] in marketing and promotional activities in support of their own sales." *Id*. at 1; 29 C.F.R. § 541.503 (Promotion work that is "performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work.").

In this case, there is no question that Cougill's primary duty was to sell mortgages. In her Complaint, she affirmatively alleged that she was responsible for selling loans. (Dkt. No. 12, at ¶ 29 "Plaintiffs' work is and was directly related to mortgage sales."). At her deposition, she admitted that her job was to offer residential mortgage loans to her customers and to convince them to select Prospect's loan product over a competitor's product. (Cougill Dep. at 151:7-16; 166:19-21). As she explained, she was required to "know [her] product and how to relate that to [her] clients' needs for a loan." (*Id.* at 12:18 - 13:6). To do so, she would listen to and try to

8

understand her clients' needs, and then use her product knowledge and experience to "find the right product for them." (*Id*. at 14:4-9; 150:12 - 151:6). Further, Cougill was paid on a commission basis for each loan that the buyer obtained through her. (*Id*. at 152:12-17).[2]

In addition, Cougill admitted that she engaged in a variety of activities that the DOL has categorized as sales and promotion work. (*Id*. at 15:22-16:18 (attending networking lunches); 21:3-20, 232:15-17 (attending open houses); 156:2-160:6, 165:6-166:14 (attending mortgage closings, open houses, and seminars); 160:17-161:19, 231:1-21 (presenting seminars at realtors' offices and military bases); 162:21-163:21 (attending trade shows); 174:21-22 (taking realtors to lunch); 210:14-211:5 (lunches with other referral sources); DOL Wage Hour Op. Ltr. FLSA 2006-11, at *1. In addition, when she first began working for Prospect, she signed a contract in which she agreed that her primary duty was to sell mortgages away from Prospect's office. (Ex. 5, Outside Sales Agreement). Accordingly, given Cougill's admissions, her compensation structure, and Prospect's job expectations, there is no genuine issue of material fact on the first element of the outside sales exemption—i.e., Cougill's primary duty was to sell mortgages.[3]

---

[2] The fact that an employee is compensated on a commission basis supports a determination that the employee is an "outside salesman." *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1309-10 (11th Cir. 2009).

[3] Despite these admissions, at one point in her deposition, Cougill contested the characterization of mortgage loan origination as "sales." In her view, the loans were not products; she considered the loans to be services that she sold. (*Id*. at 152:7 - 154:9; "Q: So you're selling a service. Is that what you're saying? A: Yes." 154:7-9). This exercise in semantics does not affect Cougill's exempt status. The "sales" element of the outside salesperson exemption applies to the sale of both products and services. 29 C.F.R. § 541.500; *Gregory*, 555 F.3d at 1308 (finding that title insurance employee performed work aimed at obtaining contracts for services and therefore satisfied the second element of the outside salesperson exemption).

### 2. Cougill Was Customarily and Regularly Engaged in Sales Activities Away From Prospect's Places of Business

To qualify for the outside sales exemption, the employee must also "customarily and regularly" engage in sales activities away from the employer's place of business. This does not require that an employee spend all of her time—or even a majority of her time—outside of the office. The U.S. Department of Labor ("DOL") has explained that an employee who leaves the employer's place of business for "**one or two hours a day, once or twice a week**" to engage in sales-related activities is "customarily and regularly" engaged away from the employer's place of business. *See* DOL Wage Hour Op. Ltr. FLSA 2007-2, at 3-4 (Jan. 25, 2007) (emphasis added).

Courts have adopted the DOL's threshold of "one or two hours a day, once or twice a week." For instance, in *Taylor v. Waddell & Reed*, the court correctly noted that the "customarily and regularly" standard is not a "majority of the time" test. No.: 09cv2909, 2012 U.S. Dist. LEXIS 212, at *11 (S.D. Cal. Jan. 3, 2012). The threshold is much lower. As the court noted, the "DOL [has] confirmed that selling or sales related activity outside of the office 'one or two hours a day, one or two times a week' satisfie[s] the test for the exemption." *Id*. (citing DOL Wage Hour Op. Ltr. FLSA 2007-2, at 3-4 (Jan. 25, 2007)); *see also Lint v. Northwestern Mut. Life Ins. Co.*, No. 09CV13732010 U.S. Dist. LEXIS 123117, at *8 (S.D. Cal. Nov. 19, 2010) (finding that spending 10 to 20 percent of time outside of the office engaged in sales activity is sufficient to meet the exemption).

The threshold set by the DOL of "one or two hours a day, once or twice a week" is also consistent with the standard articulated in the Preamble to the 2004 exempt-status regulations, which provides "[n]othing … requires that, to meet the definition of 'customarily and regularly,'

16577827v.2

a task be performed more than once a week or that a task be performed each and every workweek." 69 Fed. Reg. 22122, 22187 (Apr. 23, 2004).[4]

In this case, Cougill engaged in far more outside sales activities than necessary to meet the "customarily and regularly" standard. By her own description, she spent, on average, 15 to 20 hours per week away from Prospect's office, engaged in outside sales activities. (*Id*. at 173:20 - 174:6). This far exceeds the "customarily and regularly threshold" threshold. *See Taylor,* 2012 U.S. Dist. LEXIS 212, at *13; *Lint*, 2010 U.S. Dist. LEXIS 123117, at *8; DOL Wage Hour Op. Ltr. FLSA 2007-2, at 3-4.

Cougill's sales activities included but were not limited to: attending open houses, attending closings, participating in BNI group meetings; participating in BNI one-on-one meetings; having breakfast, lunch, or dinner with referral sources; teaching home buyer courses, and presenting "lunch and learns." (Cougill Dep. at 15:22 - 16:18; 21:3-20; 156:2 - 160:6; 160:17 - 161:19; 162:21 - 163:21; 165:6 - 166:14; 174:21-22; 176:20 - 177:3; 210:14 - 211:5; 230:4-12; 231:13-21; 232:15-17). Cougill's tax records further demonstrate that she spent considerable time engaged in business activities outside of her office. Each year, she incurred more than $10,000 in unreimbursed business expenses and she drove her vehicle approximately 10,000 miles per year for business purposes throughout her employment with Prospect. (Ex. 7, 2009, 2010, and 2011 Tax Returns; Cougill Dep. at 193:2 - 209:10). Moreover, Cougill had considerable flexibility with her schedule. In fact, she did not have a set schedule; she was not

---

[4] This understanding is also consistent with the DOL regulation, which notes that the frequency of activities performed "customarily and regularly" may be "less than constant" but will "normally and recurrently [be] performed every workweek." 29 C.F.R. § 541.701 (2008). As the DOL has noted, there is no suggestion in the regulations that work performed "customarily and regularly" must occupy any given percentage of an employee's weekly working hours and "nothing in [the applicable regulations] requires that to meet the definition of 'customarily and regularly,' a task be performed more than once a week or that a task be performed each and every workweek." FLSA2007-2 (internal citation omitted).

11

required to be in the office for any set amount of time; and she was not required to record her hours. (*Id*. at 240:6 - 214:5).

The DOL has concluded that mortgage loan officers who perform duties like those that Cougill performed are subject to the outside sales exemption. *See* DOL Wage Hour Op. Ltr. FLSA 2006-11 (March 31, 2006). In particular, the DOL has found that mortgage loan officers are exempt when they are responsible for "originating their own sales by contacting prospective clients and by developing and maintaining referral sources;" "meet[ing] with prospective clients at locations other than the employer's business"; "mak[ing] in-person calls on real estate agents and brokers, financial advisors, and other potential referral sources to develop borrower leads;" "engag[ing] in marketing and promotional activities in support of their own sales;" and they "ha[d] considerable flexibility to set their working hours and to schedule the tasks they perform during the workday." *Id*. at 1.

Even though the loan officers also performed significant job duties at the employer's office,[5] the DOL concluded that the employees were exempt because they engaged in various sales activities away from the employer's place of business. *Id*. at 5. The Court should therefore reach the same conclusion here.[6]

---

[5] For example, the loan officers in-office activities included: "(1) Bringing a multiple listing book up to date; (2) Calling prospects with whom the sales employee has been dealing during outside sales activities; (3) Dictating or writing letters to such prospects; (4) Talking to such prospects in the office about their particular transactions; (5) Calling a list of prospective buyers or sellers of homes with whom the sales employee has had no prior contact; (6) Preparing a contract and other forms required for a sale negotiated during the sales employee's outside sales activity; and (7) Talking to a "walk-in" prospect with whom the employee has had no prior contact and showing photographs and discussing terms on specific houses, if such activity results in subsequent outside sales activity with the prospect." *Id*. at 2.

[6] DOL Opinion Letters on this subject are due significant deference from the courts. *Tracy v. NVR, Inc.*, 599 F. Supp. 2d 359, 362 n. 1 (W.D.N.Y. 2009). "[A]n agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (quoting

12

Indeed, the outside sales exemption does not turn on whether the "sale" is technically consummated inside or outside the office. The exemption includes not only sales work itself, but also any "work performed incidental to and in conjunction with the employee's own outside sales or solicitations." *Taylor*, 2012 U.S. Dist. LEXIS 212, at *13 ("Because [the plaintiffs] conducted substantial incidental work and solicitations outside of the office, it does not matter that the actual moment of the sale occurred inside the office.") (citing 29 C.F.R. § 541.500(b)); *see also Christopher*, 132 S. Ct. at 2170-72 (timing and locale of the technical consummation of the sale, in its ordinary meaning, is not controlling).

It is also undisputed that Prospect's legitimate job expectation was for Cougill to engage in outside sales activities on a regular basis. (Ex. 5, Outside Sales Agreement; Cougill Dep. at 140:21 - 141:1). In particular, the Outside Sales Agreement makes clear that the loan officer's primary duty is to customarily and regularly:

(i) <u>sell</u> mortgage loans and other Prospect Mortgage products to Customers … or obtain orders or contracts from Customers for such products,

(ii) <u>away</u> from Prospect Mortgage's places of business or the employee's own office whether located at home or elsewhere.

(Ex. 5, Outside Sales Agreement) (emphasis in original). Moreover, Cougill concedes that Prospect required her to engage in outside sales activities, such as attending open houses and teaching home buyer seminars to generate sales leads. (Cougill Dep. at 176:20 - 177:3).

This set of expectations is important because, when assessing exempt status, courts examine the job duties an employee performs, but courts also consider the employer's realistic job expectations. *See, e.g.*, *Reyes v. Goya Foods, Inc.*, No. 13-12827, 2013 U.S. App. LEXIS

---

*Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Opinion letters have the "power to persuade, if lacking power to control," as they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

13

24257, at *4-5 (11th Cir. Dec. 6, 2013) (employee properly deemed exempt where evidence showed that employer legitimately expected employee to engage in outside sales activities, even if employee "may have personally spent little time" engaged in such activities); *Brody v. AstraZeneca Pharm., LP*, CV 06-6862 ABC, 2008 U.S. Dist. LEXIS 107301, at *15 (C.D. Cal. June 11, 2008) (granting summary judgment on outside sales exemption based on employer's expectation that employee engage in sales activities); *Ho v. Ernst & Young LLP*, C 05-4867 JF, 2009 U.S. Dist. LEXIS 5294, at *14 (N.D. Cal. Jan. 15, 2009) (analyzing exempt status of position in terms of whether it was "clear from this record [that] her position, performed as legitimately expected by [her employer], met the elements of the administrative exemption."); *Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super. 302, 322 (2005) (analysis of exempt status requires inquiry "into the realistic requirements of the job, giving consideration to how the employee actually spends his or her time, but also considering whether the employee's practice diverges from the employer's realistic expectations."); *Ramirez v. Yosemite Water Co.*, 978 P.2d 2 (Cal. 1999) (same).

In this case, because there is no dispute that Prospect expected Cougill to regularly engage in sales activities away from Prospect's place of business, and because Cougill admits that she did in fact engage in such activities on a regular basis, there is no dispute as to whether she was properly classified as exempt under the FLSA. Collectively, the undisputed facts require the Court to grant summary judgment in favor of Prospect.

## IV. CONCLUSION

For all these reasons, Prospect Mortgage, LLC respectfully asks the Court to grant its Motion for Summary Judgment in its entirety, dismiss all of Plaintiff's claims with prejudice, and grant Prospect Mortgage, LLC any other relief the Court may deem appropriate.

Dated: December 19, 2013

Respectfully submitted,

/s/ Taron K. Murakami
Taron K. Murakami
Virginia State Bar No. 71307
SEYFARTH SHAW LLP
975 F Street, NW
Washington, DC 20004
Telephone: (202) 463-2400
Facsimile: (202) 828-5393
tmurakami@seyfarth.com

Barry J. Miller (*admitted pro hac vice*)
BBO 661596
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
bmiller@seyfarth.com

*Counsel for Defendant*
*Prospect Mortgage, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2013, a copy of the foregoing document was electronically filed through the Court's CM/ECF system, which will send a notification of such filing to the following:

>Nicholas Woodfield, Esq.
>Robert Scott Oswald, Esq.
>The Employment Law Group, P.C.
>888 17th Street, NW, Suite 900
>Washington, DC 20006
>nwoodfield@employmentlawgroup.net
>soswald@employmentlawgroup.net
>
>Curtis P. Zaun, Esq.
>Paul J. Lukas, Esq.
>Timothy C. Selander, Esq.
>Nichols Kaster, PLLP
>4600 IDS Center, 80 South 8th Street
>Minneapolis, MN 55402
>czaun@nka.com
>lukas@nka.com
>selander@nka.com
>
>*Attorneys for Plaintiffs*

>/s/ Taron K. Murakami
>Taron K. Murakami (VSB 71307)
>Seyfarth Shaw LLP
>975 F Street, NW
>Washington, DC 20004
>Telephone: (202) 463-2400
>Facsimile: (202) 828-5393
>tmurakami@seyfarth.com
>*Counsel for Defendant Prospect Mortgage, LLC*

16577827v.2