```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


ALLISON COUGILL,               )
                               )
     Plaintiff,                )
                               )
          v.                   )    1:13cv1433(JCC/TRJ)
                               )
PROSPECT MORTGAGE, LLC,        )
                               )
     Defendant.                )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Prospect Mortgage, LLC's ("Defendant" or "Prospect") Motion for Summary Judgment. [Dkt. 6.] For the following reasons, the Court will deny Defendant's Motion.

## I. Background

Prospect is a California corporation that offers consumer lending products. (Second Am. Compl. ¶ 9.) Plaintiff Allison Cougill ("Plaintiff") worked as a mortgage loan officer at Prospect from October 29, 2007, until October 3, 2011. (Second Am. Compl. ¶ 5; Joint Statement of Facts ¶ 5.)

In October 2010, several former mortgage loan officers filed a collective action against Prospect under the Fair Labor Standards Act ("FLSA"). *See Sliger v. Prospect Mortg., LLC.*, No. CIV. S-11-465 LKK/EFB, 2011 WL 3747947, at *1 (E.D. Cal. Aug. 24, 2011). Plaintiffs alleged that Prospect "misclassified

1

them as exempt employees under the FLSA, and therefore improperly failed to pay them minimum wage and overtime." *Id*. at \*2. Plaintiff opted-in to the *Sliger* matter on November 16, 2011. (Second Am. Compl. ¶ 15.)

On January 23, 2013, the *Sliger* action decertified and Plaintiff was removed from the case. (*Id.* ¶ 19.) Consequently, Plaintiff filed this case against Prospect alleging analogous violations of the FLSA.[1] Plaintiff avers that Defendant wrongfully classified her as an exempt employee, resulting in lost minimum wage and overtime compensation. (*Id.* ¶¶ 23-33.)

Defendant has now moved for summary judgment. (Def.'s Mot. for Summ. J. at 1.) Defendant's only argument is that Plaintiff is exempt from the FLSA's overtime and minimum wage requirements under the statute's "outside sales exemption," which provides that employers are relieved of these obligations for employees engaged "in the capacity of outside salesman." (Def.'s Mem. in Support at 7 (citing 29 U.S.C. § 213 (a)(1)).) In support, Defendant points to Plaintiff's employment contract, which specifies that her primary duty was to sell mortgages away from Prospect's office. (*Id.* at 8-9.) Defendant has also produced testimony from Plaintiff that she engaged in sales

---

[1] This lawsuit was initially filed as a joint action by several former loan officers based in Virginia. (Compl. ¶¶ 1-9.) On November 21, 2013, this Court granted Prospect's Motion to Sever and ordered the case to proceed as six separate actions. Consequently, Plaintiff is the only litigant in the above captioned case.

related work away from the office while at Prospect. (*Id.* at 10-12.) Thus, concludes Defendant, Plaintiff was properly classified as exempt under the FLSA. (*Id.*)

On January 2, 2014, Plaintiff filed an opposition disputing her classification as an exempt employee. (Pl.'s Opp'n at 1.) According to Plaintiff, the evidence shows that she performed a vast majority of her work inside of Defendant's office and "did not customarily and regularly make outside sales to borrowers." (*Id.* at 21-22.)

Defendant's Motion for Summary Judgment is now before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving

party.'" *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson,* 477 U.S. at 256). This is particularly important where the opposing party bears the burden of proof. *Hughes,* 48 F.3d at 1381. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249-50. The mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the opposing party is entitled to a verdict.

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.,* 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary

judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

With these standards in mind, the Court will address the merits of Defendant's motion below.

## III.   Analysis

The FLSA requires an employer to pay minimum wage and overtime compensation to employees who work more than forty hours per week. *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1). Nevertheless, workers employed as "outsides salespersons" are exempt from these requirements. *See* 29 U.S.C. § 213(a)(1). An outside salesperson is defined as an employee:

> (1) Whose primary duty is:
>
> > (i) making sales . . ., or
> >
> > (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a).[2]

---

[2] Although federal regulations are not binding in the same way as federal statutes, they are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute. *See Patel v. Napolitano*, 706 F.3d 370, 373 (4th Cir. 2013). In this case, neither party argues that any of the applicable regulations are arbitrary or contrary to the FLSA's

5

As evident from this language, the outside sales exemption contains two prongs. For purposes of the primary duty prong, the FLSA defines "sale" or "sell" to include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). Furthermore, the "term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulations indicate that the amount of time spent performing exempt sales work is useful, but not dispositive, in resolving an employee's "primary duty." *Id.* Determining an employee's primary duty requires consideration of all of the facts in a specific case, "with the major emphasis on the character of the employee's job as a whole." *Id.*

As for the second prong, "the phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. This includes "work normally and recurrently performed every workweek," but does not embrace "isolated or one-time tasks." *Id.* The term "away from the employer's place of business" is addressed in another regulation, which provides:

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee

---

intent. Accordingly, the Court will give the cited regulations appropriate deference.

> who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business[.]

*See* 29 C.F.R. § 541.502. A separate regulation further clarifies that "promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work." 29 C.F.R. § 541.503(a).

The Department of Labor ("DOL") has concluded that selling or sales related activity outside the office "one or two hours a day, one or two times a week" can satisfy the second prong of the exemption. *See* DOL Wage Hour Op. Ltr. No. FLSA2007-2 (Jan. 25, 2007).[3]

Because the outside sales exemption is an affirmative defense, the defendant bears the burden of establishing its application. *See Speert v. Proficio Mortg. Ventures, LLC,* No. JKB-10-718, 2011 WL 2417133, at *6 (D. Md. June 11, 2011). Moreover, because the FLSA is a remedial act, its exemptions are narrowly construed. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960) ("We have held that these exemptions are to be

---

[3] DOL opinion letters are not binding on courts, but "constitute a body of experience and informed judgment" that are given "substantial weight." *Flood v. New Hanover Cnty.,* 125 F.3d 249, 253 (4th Cir. 1997).

narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.").

Properly synthesized, the above regulations provide that where an employee's primary duty is sales, the employee is accurately classified as exempt if he or she performs such primary duty away from a fixed site, and performs such duty, including any incidental promotional work, on a greater than occasional basis. *See, e.g., Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 550-51 (E.D. Mich. 2004).

In the present case, it is undisputed that Plaintiff's primary duty was to make sales within the meaning of the exemption. DOL Wage Hour Op. Ltr. No. FLSA2006-11 (Mar. 31, 2006) (concluding that mortgage loan officers who sell mortgage loan packages fulfill the sales requirement of the exemption). In both her pleadings and deposition testimony, Plaintiff admitted that she was responsible for selling mortgage loans. (Second Am. Compl. ¶ 29; Cougill Dep. 151:7-16, 166:19-21.)[4] Accordingly, the only remaining question is whether Plaintiff "customarily and regularly" engaged in exempt sales activities

---

[4] Despite these admissions, at one point in her deposition Plaintiff contested the characterization of mortgage loan origination as "sales." In her view, the loans constitute services and not products. (Cougill Dep. 152:7-154:9.) This exercise in semantics does not alter the Court's conclusion. The "sales" element of the outside salesperson exemption applies to the sale of both products and services. *See* 29 C.F.R. § 541.500; *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1308 (11th Cir. 2009).

away from Prospect's office.  Having reviewed the evidence, the Court finds that Defendant has failed to meet its burden on summary judgment as to the second prong of the exemption.

In support of its argument that Plaintiff regularly engaged in sales activities away from the office, Prospect relies almost exclusively on Plaintiff's deposition.  (Def.'s Mem. in Support at 10-11.)  Although some of Plaintiff's testimony does in fact aid this position, a significant portion is inapposite.  For instance, Plaintiff testified that she spent "99.9 percent" of her time inside the office.  (Cougill Dep. 22:13-19.)  Plaintiff further attested that the overwhelming majority of her sales came from referral sources who she maintained contact with via phone and email while in the office.  (Cougill Dep. 15:4-21, 162:21-163:11.)  Aside from a few sporadic lunches, Plaintiff rarely met face-to-face with these business contacts.  (Cougill Dep. 168:12-22, 175:15-18.)  Her interaction with potential customers was similarly intermittent and limited.  (Pl.'s Opp'n at 5-6.)  Such testimony supports Plaintiff's contention that her outside activities were not performed at the frequency necessary to trigger the exemption.  *See Shultz v. All-Fund, Inc.,* No. JFM 06 CV 2016, 2007 WL 2333049, at *2-3 (D. Md. Aug. 13, 2007) (finding the exemption inapplicable where the plaintiffs spent the overwhelming

9

majority of their time originating loans from within the branch office).

Defendant, nevertheless, focuses the Court's attention on Plaintiff's statement that she spent approximately fifteen to twenty hours per week outside of the office engaged in sales activities:

> Q: I'm asking you about the time out spent outside of the office for Prospect. So that includes open houses. That includes trade shows. That includes meetings with the realtors. All those things. Given me an estimate of how many hours a week on average that you think you worked outside of the office and outside of your home office.
>
> A: 15 to 20 hours a week.

(Cougill Dep. 173:20-174:6.) This part of Plaintiff's deposition, however, is far from clear. Although Defendant correctly quotes the testimony, Plaintiff thereafter explained her account, stating that the only regular work she did outside of Prospect's office was to attend an open house twice a month for four to five hours, a trade show once per year for five to six hours, and lunch with a realtor once per month for an hour. (Cougill Dep. 174:14-22.) She further testified that she did not "know how to add . . . up" her time outside the office. (Cougill Dep. 175:4-11.)

Taken as a whole, Plaintiff's testimony is uncertain as to the nature of the activities she performed outside of the office and the amount of time she spent on each. (*See, e.g.,* Pl.'s Opp'n at 12-13.) For purposes of summary judgment, such ambiguous testimony must be construed in the light most favorable to the non-moving party, which in this instance is Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Consequently, the Court finds that a genuine dispute of material fact precludes summary judgment in Defendant's favor. The degree to which Plaintiff was away from the office conducting sales activities, which lies at the core of the second prong's inquiry, is not sufficiently clear. *See Arnold v. Reliant Bank*, 932 F. Supp. 2d 840, 857 (M.D. Tenn. 2013) (denying motion for summary judgment on FLSA claim where the evidence was indefinite regarding the amount of time plaintiff spent engaged in outside sales work); *Wong v. HSBC Mortg. Corp.,* 749 F. Supp. 2d 1009, 1015-17 (N.D. Cal. Sept. 29, 2010) (same). In other words, the conflicting testimony is sufficient to impede summary judgment. *See Casas v. Conseco Fin. Corp.,* No. Civ.00–1512, 2002 WL 507059, at *11 (D. Minn. Mar. 31, 2002). Accordingly, Defendant's motion will be denied.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment. An appropriate Order will issue.

|  |  |
|---|---|
| January 14, 2014 | /s/ |
| Alexandria, Virginia | James C. Cacheris |
|  | UNITED STATES DISTRICT COURT JUDGE |